UNITED STATES DISTRICT COURT
DISTRICT OF MASSACHUSETTS
EASTERN DIVISION

CIVIL ACTION NO. 07-CV-12383 FNG

EUGENE DUPUIS and
JUDITH DUPUIS

        Plaintiffs

v.

KBA NORTH AMERICA, INC.,
SHEETFED DIVISION (a foreign corporation)
And KOENIG & BAUER, AG (a foreign corporation)

        Defendant

**PLAINTIFFS' OPPOSITION TO DEFENDANTS' MOTION TO PRECLUDE THE EXPERT TESTIMONY OF DARRY ROBERT HOLT AND FOR SUMMARY JUDGMENT PURSUANT TO FED.R.CIV.P.56**

    Plaintiffs Eugene Dupuis (Mr. Dupuis) and Judith Dupuis hereby oppose the Defendants' motion to exclude the testimony of the Plaintiffs' Expert Witness, Darry Robert Holt (Mr. Holt), and for Summary Judgment pursuant to Fed.R.Civ.P 56. As grounds therefore, the Plaintiffs submit that Mr. Holt is fully qualified to render expert opinion in the areas discussed in his expert disclosures, including all aspects of mechanical engineering and the related concepts of product design as well as the basic concepts of well-established human factor considerations.  Tellingly, the Defendants' motion almost totally neglects mentioning Mr. Holt's main ground for his opinion that the subject Planata Varimat Printing Press was defective and his alternative reasonable designs, i.e. that the Incident Printing Press did not have a different audible alarm for forward and reverse functions pursuant to

1

American National Standard Institute (ANSI) Standard B65.1-1985 § 3.7.1(b) (the ANSI Standard), and that the ANSI standard states this is the most commonly used safety signaling system for Printing Presses.

As further grounds, the Plaintiffs states that Mr. Holt is a 1963 graduate in mechanical engineering from Purdue University and has practiced in his field from 1964 to present. He is a registered professional engineer with extensive experience in machine design and manufacturing as well as safety issues related to the use of machinery, including printing presses. He has been recognized as an expert on a number of occasions by Courts throughout the Commonwealth of Massachusetts and other jurisdictions relating to design and manufacturing safety issues, including those related to printing press design issues. Mr. Holt was qualified as an expert in one of Massachusetts seminal guarding/"printing press cases" of <u>Fahey v. Rockwell Graphics Systems, Inc.</u>, 20 Mass. App. Ct. 642 (1985).

Mr. Holt's opinions are reliable, grounded in long established scientific and engineering principles, the applicable ANSI Safety Standard, and his own knowledge based on his education, training and experience, all supported by rudimentary elements of engineering and mechanical design, his inspection of the subject printing press, and his analysis of the facts of this case. His testimony will assist the jury to understand the evidence regarding product design and hazard analysis so that the jury may understand the evidence and render a just decision.

For the reasons set forth below, in the Affidavit of Darry Robert Holt (Holt Aff.) **(Ex. W)**, and in the accompanying Statement of Undisputed Material Facts, this Court should DENY Defendants' Motion.

I.     STATEMENT OF THE CASE

A. **Factual and Procedural History**

This product liability action arises out of a May 30, 2007 incident at Americraft Carton, Inc. (Americraft) in Lowell, Massachusetts, in which Plaintiff Mr. Dupuis sustained a right hand crush injury while operating an 18-19 year old Planeta Varimat six unit multi-color sheet fed printing press (the Incident Press) as Pressman.  (Plaintiffs' Rule 56. 1 Statement of Undisputed Material Facts)(Pl. 56.1 St.)(Para. 1-2, Docket #16, Para 6-9).  The Incident Printing Press was a model VEB Polygraph, Druckmachinen Werk, V67SW1, NR240481, manufactured in the former East Germany, and was manufactured in 1988.

On May 30, 2007, Mr. Dupuis and his co-worker Fred Donnelly (Mr. Donnelly) were changing, or removing the blanket on the blanket cylinder of the press's sixth unit when Mr. Dupuis' hand was pulled into an in-running nip point between the blanket and plate cylinder. (Pl. 56.1 St. Para. 3).  Mr. Dupuis saw a "smash," or imperfection, on the blanket requiring its removal to fix it. (Dupuis Depo. Def. Ex. B at pp. 70:10-15, 71:3-8).  At the time of the incident, Mr. Dupuis was positioned on the drive side of the subject press with Mr. Donnelly opposite, or on the aisle side of the press. (Pl. 56.1 St. Para 4-5).

The control panels at either side of the sixth unit contain four vertical operating buttons.  The top two buttons on both sides are "jog forward" and "jog reverse," which move the blanket a short distance when depressed.  The third button down on the two panels is the "crawl" or continuous movement, button.  The aisle side crawl button operates in forward, while the gear side crawl button operates in reverse. The bottom button on the two control panels is the emergency "stop" button. The reverse control buttons on the two [sides] of the

Planeta press in the location where Mr. Dupuis and [Mr. Donnelly] were working on the day of this accident have collars that are above the level [of the reverse control] button. (Pl.56.1 St. Para 63). All of the buttons, however, have the same tactile feel to the operators, meaning they cannot be distinguished by touch. None of the buttons are separated by barriers.

Forward operation of the press creates an in-running nip point where Mr. Dupuis's hand was crushed, and reverse operation pushes the blanket out of the press and creates no nip-point. (Def. Ex. B, at p. 63:4-9; Docket 16 at Para. 9). An interlocked nip point barrier guard runs along the length of the press at the nip point where the incident occurred, which would stop the press (if it was in good working order, not disabled, or overridden)(Pl. 56.1 St. Para 24-25, 49-59).

Mr. Donnelly was stationed on the aisle side of the press on the day of the incident, and claims that he was customarily stationed on the gear side. (Pl. 56.1 St. Para. 5 and Excerpts to the deposition of Fred Donnelly, Attachment of Def. Ex. C, at pp. 55:4-7; 77:17-24, 78:1-24).

When running the press in jog or crawl mode a horn will sound and there will be a delay before the cylinder rotates. The horn blows whether you are in forward or reverse mode. There is no difference in the sound of the horn. (Pl. 56.1 St. Para. 84)

The incident occurred as described as follows. Mr. Dupuis was holding the blanket bar with both hands, while Mr. Donnelly, who had to hit the button, was holding the blanket bar with one hand. Mr. Donnelly, while not looking at the control station and buttons, but looking at the blanket bar, pressed a "forward" operating button one time, a horn then sounded and few seconds passed. Mr. Donnelly then pressed the same forward button

instead of the correct "jog reverse" button, drawing Mr. Dupuis right hand between the blanket and plate cylinder (Pl. 56.1 St. Para. 6-12, 85-88, ).

### 1.   *The Incident Press Machine and Investigation*

On the day of the subject incident, Sentry Insurance Company (Senty), Americraft's worker's compensation insurer, retained Mr. Holt of Holt Associates P.C. to inspect the subject press. (Pl. 56.1 St. Para 15). Mr. Holt inspected the Incident Press the next day, accompanied by Mr. Dupuis' supervisor at Americraft, Thomas Clark, and Watercraft's manufacturing manager, James Klecak. (Pl. 56.1 Statement Para 16, and Depo. of Darry Robert Holt, attachment by Def. D&E at pp. 41:18-19; 48:4-10; and August 14, 2007 Sentry Investigative Report, attachment by Def. Ex. H, at p. 1). Mr. Holt did not observe the press in operation that day because the press was not running intentionally because of the traumatic nature of the incident to personnel. (Pl. 56.1. St. Para. 109)**.** Thomas Clark was the Americraft Carton employee responsible for maintenance and repair of the Planeta-Varimat press around May 30, 2007. Mr. Clark was not aware of any guard that was not functioning properly at that time or any switch that was not functioning at the time of the incident. (Pl. 56.1 St. Para. 100-101). Mr. Holt's understanding both from the meeting with Mr. Clark and Mr. Kleckak and a memo dated May 30, 2007 signed by Mr. Clark is that all of the machine's safeguards, interlocks, and guards covering nip points were operating properly. (Pl. 56.1 St. Para. 100-101). Mr. Holt did not get to speak with Mr. Dupuis or Mr. Donnelly on that day. Mr. Holt issued a preliminary finding Report to Sentry based on the very limited factual information he possessed at the time. (Pl. 56.1 St. Para. 20).

## 2. *Discovery Regarding Incident*

This case was commenced and discovery ensued. Mr. Dupuis described the subject incident, claiming that Mr. Donnelly must have hit the inch/jog forward button instead of the inch/jog backward button because his right hand was pulled into the nip point. Then Fred must have panicked and hit the inch/jog forward button again because Mr. Dupuis hand got pulled further in the incident press. (Pl. 56.1 St. Para. 6). Mr. Dupuis similarly testified at his deposition on July 1, 2009. (Pl. 56.1. St. Para. 7, 12). Mr. Donnelly testified that he always intended to press the "jog reverse" button but accidentally pushed the "crawl forward" button during the incident. (Pl. 56. 1 St. Para. 8-10, and Def. Ex. C, at pp. 59:20-60:11).

Mr. Dupuis testified that there had been broken parts on the incident press, that it sometimes took Americraft Carton "awhile" to fix them, but that Mr. Dupuis thought that the press was working properly on the day of the incident. (Pl. 56.1 St. Para. 86). Mr. Donnelly testified that if there was a problem with the switch or interlock he would either get the electrician or the mechanic. Mr. Donnelly does not remember an occasion when the press was not working properly but the press was continued to run. (Pl. 56. 1 St. Para. 90).

## 3. *The ANSI STANDARD B65.1 (1985)*

There was published an American National Standard Institute, Safety Specifications for Printing Press Drive Controls, ANSI B65.1-1985 (the ANSI Standard); the standard is applicable to the Incident Printing Press. (Pl. 56.1. St. Para. 90).

Section 3.7.1 of the ANSI Standard states: "SAFETY SIGNALING SYSTEM . This system shall consist of mandatory warning devices as described in Sec. 3.7.1. or 3.7.2 which shall indicate safe and unsafe press conditions, impending motion and changing press status." (Pl. 56.1 St. Para. 93).

Section 3.7.1 (b) of the ANSI Standard states: "Audible Alarm. A horn, bell or other distinctive audible warning device which when sounded, indicates impending press motion. This device shall have the capability of providing a minimum sound level of 3 decibels greater than the ambient noise of the appropriate motion zone. <u>Different audible characteristics shall be used to distinguish between forward and reverse directions</u>." (emphasis added). (Pl. 56.1 St. Para. 94)

Section E3.7.1 of the ANSI Standard states: "Audible Warning System With Annunciator Lights. This is the most commonly used safety signaling system." (Pl. 56.1. St. Para. 95).

### 4. *Plaintiffs' retention of Mr. Holt as expert*

Mr. Holt was retained as Plaintiffs expert around September 2009. An inspection of the incident press was held on September 15, 2009, which the Defendants' expert also attended. (Pl. 56.1 St. Para. 26). At the inspection, the Press was not in operation. No one would speak to Mr. Holt that day. Mr. Holt tried to ask questions but either Defense counsel or Third Party counsel told him not to ask questions. (Pl. 56.1 St. Para 110).

## B. Mr. Holt's Expert Report and Testimony

### 1. *Mr. Holt's Qualifications*

In Mr. Holt's February 2, 2010 Fed.R.Civ.P. 26(b)(2) Report it is stated that he is a mechanical engineer and licensed professional engineer with ten years experience in private industry and thirty six years of consulting experience evaluating safety designs on numerous machines, including printing press. (Def. Ex. J, at pp. 1-2). Mr. Holt graduated from Purdue University in January 1963, after 3-1/2 years of study in an accelerated program, with a Bachelor of Science Degree in Mechanical Engineering. (Holt Affidavit, Ex. W, Para, 3) Mr.

7

Holt was elected to Pi Tau Sigma, the mechanical engineering school scholastic honorary society, and Tau Beta Pi, the all engineering schools scholastic honorary society. (Id., Ex. W, Para. 4). Mr. Holt is a registered professional engineer and obtained this license by taking two eight hour problem-solving exams spaced approximately a decade apart and by accumulating the required years of engineering work experience. (Id., Ex. W, Para. 7). Mr. Holt has been involved in many printing press cases where the controls of the machine are always part of addressing the design or condition of the machine. (Pl. 56.1 St. Para. 99). Mr. Holt is a mechanical engineer and as part of his education and background he had electrical engineering training too. He was cross trained because all machines have to be controlled electronically, hydraulically, pneumatically. (Pl. 56.1 St. 99).

Mr. Holt has been qualified in many "printing press cases" including, Fahey v. Rockwell Graphics Systems, Inc., 20 Mass. App. Ct. 642 (1985) (Holt Aff., Ex. W, Para. 36). Mr. Holt estimates that he has been consulted in "printing press" cases approximately fifty (50) or more time, in which the evaluations included operation of the printing presses to discern their principles of operation, and the circumstances under which personnel may be injured by moving components of the press. (Holt Aff., Ex. W, Para. 23)

In a previous Daubert challenge to Mr. Holts' testimony, in a products liability case involving a "trimmer," Mr. Holt was qualified and allowed to testify by the Honorable Nathaniel M. Gorton. Silva v. Milacron, et al., USDC, C.A. No. 01-40003-NMG (Ex. V), Memorandum and Order, March 5, 2004) (Ex.B). Judge Gorton wrote: Mr. Holt is a licensed engineer by the Commonwealth of Massachusetts as a professional engineer and has worked in that capacity and as an accident consultant for more than 20 years. He, therefore, qualifies as an expert in the field of mechanical engineering and his proffered testimony satisfies the

criteria established by the Court in <u>Daubert</u> and <u>Kumho Tire</u>. The fact that Mr. Holt is not specifically an expert on the trimmer machine at issue in this case does not disqualify him from testifying as an expert. Mr. Holt's general engineering expertise obviates the need for specific expertise in the engineering of the trimmer machine." <u>Id.</u> at 14.

### 2. *Mr. Holt's Testimony and Methodology*

In Mr. Holt's report, dated February 2, 2010, Mr. Holt opined, after a review of the discovery:

   a. the subject press is unsafe and defective in design because it "lack[s] adequate safeguards for the in-running nip points."
   b. "[T]he risk of severe injury could have been reduced to an acceptable residual level by making the controls less susceptible to mis-selection by shape coding of the buttons or separation of the buttons by barriers."
   c. "Further, the risk could also have been reduced by reducing the probability of a control mis-selection resulting in sever injury by incorporation of two distinct audible alarms for the forward and reverse operating modes as required by the applicable standards.
   d. "Such a feature would reduce the risk, but would not defeat the design purpose of the equipment nor substantially increase its costs.

(Def. Ex. J, at p. 5). In coming to these conclusions, Mr. Holt followed the safety design hierarchy; Mr. Holt's first step was to identify the hazard. (Holt Aff., Ex. W, Para. 14, 20-21). Mr. Holt then researched how the hazard could be eliminated or safeguarded or warned against. (Id., Ex. U, Para. 12). This is universal for all equipment. (Id., Ex. U, Para. 12). Mr. Holt consulted relevant standards, in this case the ANSI Standard B65.1-1985. (Id., Ex. U, Para. 18-19 ). Mr. Holt then evaluated the adequacy of the safety design of the subject Printing Press as it related to the circumstances of Mr. Dupuis' accident, and finally made iterative application of engineering controls to reduce the risk to an acceptable residual risk. (Id., Ex. U, Para. 20-30).

## II.     ARGUMENT

### A. Summary Judgment Standard

In a motion for summary judgment, all facts must be considered in the light most favorable to the nonmoving party. Fed. R. Civ. P. 56(c); Mariasch v. Gillette Co., 521 F.3d 68, 70 (1st Cir. 2008). The movant bears the burden of showing that there is no genuine issue regarding any material fact in the pleadings, discovery materials, and affidavits, and that the movant is entitled to judgment as a matter of law. Fed R. Civ. P. 56(c); Rogers v. Fair, 902 F.2d 140, 143 (1st Cir. 1990) ("To succeed, the moving party must show that there is an absence of evidence to support the nonmoving party's position."). If the moving party meets its burden, the burden shifts to the nonmovant to demonstrate a genuine, triable issue. Celotex Corp. v. Catrett, 477 U.S. 317, 324, 106 S. Ct. 2548, 91 L. Ed. 2d 265 (1986). A summary judgment motion "cannot be defeated by relying on improbable inferences, conclusory allegations, or rank speculation." Ingram v. Brink's, Inc., 414 F.3d 222, 228-29 (1st Cir. 2005).

### B. Requirement for Expert Testimony

There are several factors that are relevant in determining whether a product contains a design defect: (1) the gravity of the danger posed by the challenged design, (2) the likelihood that such danger would occur, (3) the mechanical feasibility of a safer alternative design, (4) the financial cost of an improved design, and (5) the adverse consequences to the product and to the consumer that would result from an alternative design. Back v. Wickes Corp., 375 Mass. 633, 642 (1978); Fahey v. Rockwell Graphic Sys., Inc., 20 Mass. App. Ct. 642, 649

(1985). The appropriateness of a design depends largely, although not exclusively, on consumer expectations. Back v. Wickes Corp., 375 Mass. at 642.

Whether a product is defectively designed is often a question of fact for the jury. See, e.g., Coons v. A.F. Chapman Corp., 460 F. Supp. 2d 209 (D. Mass. 2006) (question of fact whether knife and protective guard for press were defective); One Beacon Ins. Co. v. Electrolux, 436 F. Supp. 2d 291, 294-96 (D. Mass. 2006) (question of fact regarding design and manufacture of dryer); Santos v. Sunrise Med., Inc., 351 F.3d 587 (1st Cir. 2003) (question of fact whether hydraulic lift used to transfer nursing home patient from bed to wheelchair was defective because locking mechanism had a tendency to disengage); Shuras v. Integrated Project Servs., Inc., 190 F. Supp. 2d 194 (D. Mass. 2002) (manufacturer not entitled to summary judgment on design issue). In some cases, however, defendants are entitled to judgment as a matter of law because the plaintiff's evidence is insufficient. See, e.g., Fidalgo v. Columbus McKinnon Corp., 56 Mass. App. Ct. 176 (2002) (defendant entitled to a directed verdict).

## C. The Daubert/Kumho Standard for Admissibility

The Defendants bring their motion pursuant to the standards of admissibility of expert testimony decided by the Supreme Court in Daubert v. Merrell Dow Pharmaceuticals, Inc., 113 S.Ct. 2786, 125 L.Ed.2d 469 (1993) in which the Court clearly set forth the jurisdictional forum for applying the rule therein:

> "[T]he Rules – especially Rule 702 – place appropriate limits on the admissibility of purportedly scientific evidence by assigning to the trial judge the task of ensuring that the experts' testimony both rests on reliable foundation and is relevant to the task at hand. Daubert, *supra* at 2789. Faced with a proffer of expert scientific testimony under Rule 702, the trial judge, pursuant to

> Rule 104(a), must make a preliminary assessment of whether the testimony's underlying reasoning or methodology is scientifically valid e and properly can be applied to the facts at issue. Id. at 2790

The Supreme Court's objection in Daubert was to make sure, "when scientists testify in court, they adhere to the same standards of intellectual rigor that are demanded in their professional work. Cf. 113 S.Ct. at 2799; O'Conner v. Commonwealth Edison Co., 13 F.3d 1090, 1106-1107 (7th Cir. 1994). If they do, their evidence (provided of course that it is relevant to some issue in the case) is admissible even if the particular methods they have used in arriving at their opinion are not yet accepted as canonical in their branch of the scientific community. Rosen v. CIBA-Geigy Corporation, 78 F.3d 316, 317 (emphasis added).

Experts properly may rely on a wide variety of sources and may employ a similarly wide choice of methodologies in developing an expert opinion. See Cooper v. Nelson, 2000 U.S. App. Lexis 2430 quoting United States v. Lundy, 809 F.2d 392, 395-96 (7th Cir. 1987). A rigid general acceptance requirement would be at odds with the liberal thrust of the Federal Rules of Evidence and their general approach of relaxing the traditional barriers to "opinion" testimony. Daubert at 2794.

Because of the widespread filing of meritless Daubert motions, various courts have sought to bring order and sanity to what many defense lawyers have tried to interpret as an absolute exclusion of expert testimony and violation of plaintiffs' right to a jury. As clearly shown, the Supreme Court had no such intention and the Federal Courts of Appeal correctly have applied Daubert to traditional standards of proof.

> "The proper method of attacking evidence that is admissible but subject to doubt is cross-examine

> vigorously, to present contrary evidence, and to give careful instructions on the burden of proof. <u>Daubert</u> acknowledged the continuing vital role that 'vigorous cross examination, presentation of contrary evidence, and careful instruction of the burden of proof, 509 U.S. at 496, are to play in the trier of facts' ultimate evaluation of admissible but shaky evidence. <u>See Daubert</u>, 590 at 596. <u>See also</u> <u>Rusjing v. Kansas City S.Ry.Co.</u>, 185 F.3d 496, 507 n.10 (5th Cir. 1999); <u>Allison v. McGhan Med. Corp.</u>, 184 F.3d 1300, 1311 (11th cir. 1999); <u>Freeman v. Chase Corp.</u>, 118 F.3d 1011, 1017( 4th Cir. 1997), <u>cert. denied</u>, 522 U.S. 1069, (1998)

<u>Cooper v. Nelson</u>, 2000 U.S.App. Lexis 3430.

### C. <u>Mr. Holt's Expert Testimony is Relevant and Reliable</u>

The central inquiry for the trial court is into the relevance and reliability of the proffered testimony. <u>See</u> <u>Daubert</u>, 509 U.S. at 594-595. An expert witness offered in support of a claim of design defect must (1) be qualified as an expert, (2) offer testimony that is relevant to the disputed facts in the case, and will likely assist the jury in deciding the particular issues of the case, and (3) offer testimony that "has reliable basis in the knowledge and experience of the relevant discipline." <u>See</u> Fed.R.Evid. 402, 703; <u>Daubert v. Merrell Dow Pharmaceuticals, Inc.</u>, 509 U.S. 579 (1993); <u>Khumho Tire Co. Ltd. v. Carmichael</u>, 526 U.S. 137 (1999). Mr. Holt is qualified to render his opinions, and his opinions are relevant and reliable.

**1.**   *Mr. Holt is qualified to provide testimony in this matter*

As stated above in section I.B. Mr. Holt has an engineering degree, ten years of experience in private industry, and is a registered professional engineer. Mr. Holt has been qualified as an expert to testify in "printing press" cases where the control of the machines is

13

always an issue for review. Mr. Holt has inspected and evaluated the adequacy of printing press approximately fifty times or more in his career. Here, just as in the Silva case cited above, "The fact that Mr. Holt is not specifically an expert on the [Printing Press] at issue in this case does not disqualify him from testifying as an expert. Mr. Holt's general engineering expertise obviates the need for specific expertise in the engineering of the trimmer machine." (Ex. V). The Second Circuit has held that an expert need not have designed, manufactured, or worked with the type or product at issue in order to render an opinion as to its safety. Stagl v Delta Air Lines, Inc. 117 F.3d 76, 82 (2d. Cir. 1997).

Mr. Holt need not have a degree in psychology or particular education to testify as to basic human factors as the Defendants contend. The Rule 702 requirement that an expert have "specialized knowledge" is to be interpreted liberally, with the focus being on the expert's "'practical experience as well as academic training and credentials.'" Waldorf v. Shuta, 142 F.3d 601, 625 (3d Cir. 1998) (quoting Am. Tech. Res. v. United States, 893 F.2d 651, 656 (3d Cir. 1990). The use of human factors is the basic interface between man and the machine. In order to design a safe machine, an engineer must have at least a basic understanding of how a human will interact with it. Mr. Holt need not re-invent the wheel by sampling human beings and their reaction to horns and the tactile sensations felt when depressing buttons by operators of machinery.

**2.**   *Safeguarding issues are relevant*

Mr. Holt opines that the machine is defective due to the absence of adequate safeguards for the in-running nip points is completely valid. Mr. Holt has testified that the subject press contained a nip barrier guard system that would have prevented Mr. Dupuis's injuries had it been functioning. However, it is reasonably foreseeable that an interlock

14

system will deteriorate, fail, or be overridden, and thus the necessity on the Incident Printing Press to be equipped with an audible warning system with annunciator lights as stated in ANSI B65.1-1985 § 3.7.1(b).  (Pl. 56.1 St. Para. 94).

3. *Mr. Holt's opinions of defect and alternative reasonable design are relevant, and likely to assist the jury.*

Mr. Holt's alternative reasonable designs have a basis in fact and are relevant.  Mr. Holt suggested alternative reasonable designs for shape coding the buttons on the incident press, i.e. some could be smooth and some could be disrupted, i.e. like braille. (Pl. 56.1 St. Para. 105).

Mr. Holt further testified that the buttons on the machine could be separated by covers.  For example, all the reverse buttons may be covered so that you have to pick it up and press it.  Another way to accomplish the separation between forward and reverse would be to place barrier in between the buttons if they were vertically aligned. (Pl. 56.1 St. Para 106).

The testimony and facts in this case is that Mr. Donnelly, to change the blanket was holding the blanket with one hand, and was not looking at the control station and the buttons when he went to depress the button. (Pl. 56. 1 St. Para 85-88).

Therefore, the alternative reasonable design theories have basis in fact and are relevant. If the forward and reverse function buttons had a different tactile feel, it is likely that Mr. Dupuis' injuries would have been prevented. Mr. Donnelly, upon having his finger encounter a button with a tactile feel for "forward" would have removed his finger. Similarly, if the forward and reverse mode buttons were separated by covers or by barriers it is very likely that Mr. Dupuis injuries would have been prevented.

15

Finally, if there had been different audible warning horns for forward and reverse, with a timing delay function, it is almost a certainty that Mr. Dupuis would not have been injured. Mr. Donnelly would have known that he hit the incorrect button the first time, before having to hit the button the second time for actuation. At the same time, Mr. Dupuis would have been alerted by the horn that the Printing Press was about to go in a forward direction and he would have had time to remove his hand.

### 3. *Mr. Holt's proposed testimony is reliable and not merely ipse dixit it is largely based upon the ANSI standard*

Daubert only prescribes judicial intervention for expert testimony approaching the outer boundaries of traditional scientific and technological knowledge." Lappe v. American Honda Motor Co., 857 F. Supp. 222, 228 (N.D.N.Y. 1994) aff'd 101 F.3d 682 (2d Cir. 1986). Other factors may be more relevant when courts consider more mainstream methods. Jugle v Volkswagon of Am., Inc., 975 F. Supp. 576, 580 (D.Vt. 1997). Courts applying Daubert have found other pertinent factors or have recognized that the Daubert factors do not apply to all types of expert testimony. Adel v Greenspring of Vermont, Inc., 363 F. Supp. 2d 683, 686 (D.Vt. 2005) citing Blanchard v Ely Lilly & Co., 207 F. Supp. 2d. 308 at 315-16 (D.Vt. 2002). Neither peer review and publication nor general acceptance are dispositive in the reliability assessment. Becker v National Health Products, Inc., 896 F. Supp. 100, 103 (N.D. New York 1995) (citing Daubert v Merrell Dow Pharmaceuticals, Inc., 509 in the U.S. 579, 113 S. Ct. 2786., 2797 (1993).

The Defendants' claim that Mr. Holt's application of "general engineering principals" to his review of the file material, two inspections of the subject press, and his review of a number of treatises and relevant ANSI standard (Def. Ex. J, at pp. 1-2, 6) should be grounds

16

for preclusion of his testimony.  They continue to argue by stating that his alternative reasonable design theories have not been tested or subject to peer review.

In Berrier v. Simplicity Mfg., 563 F.3d 38, 83 (3rd Cir. 2009) the Third Circuit Appeals Court clearly stated that evidence of effective alternative reasonable designs can be found in ANSI standards, "The Berriers evidence of effective alternative reasonable designs included: … the recent OPEI/ANSI standard requiring NMIR protection**.**"  The Appeals Court vacated the District Court's grant of summary judgment for the defendant on the plaintiff's strict liability and negligence claims. Berrier, 563 F. 3d at 86-87.

The reliability of Mr. Holt's alternative reasonable design, that the Printing Press have two distinct audible alarms, one for forward and one for reverse, is clearly stated in ANSI Standard B65.1-1985 § 3.7.1. (b) and ANSI E 3.7.1 also clearly states that, ""Audible Warning System With Annunciator Lights.  This is the most commonly used safety signaling system." (Pl. 56.1 St. Para. 93-95). The Defendants argue that there is no basis whatsoever in the factual record for Mr. Holts opinion, because there is no testimony that an alarm would have changed Mr. Donnelly or Mr. Dupuis's behavior, or that it would have functioned in a way that would have prevented or minimized the risk of the incident.  That assertion is outlandish.  Massachusetts law, in almost all contexts, permits the jury to infer that a warning, if properly given**,** would have been followed. See Harlow v. Chin, 405 Mass. 697, 702-703 (1989). Although a party may rebut this inference, see Wolfe v. Ford Motor Co., 6 Mass. App. Ct. 346, 352, "the decision whether evidence is relevant remains within the sound discretion of the trial judge." McLaughlin v. Vinios, 39 Mass. App. Ct. 5, 8 (1995), quoting Anthony's Pier Four, Inc. v. HBC Assocs., 411 Mass. 451, 477 (1991).

The Defendants argue that Mr. Holt has failed to prepare any drawings, modeling, evaluation or testing of his proposed alternative designs. There is no prerequisite that Mr. Holt have tested a prototype of some ideal design, but only that his testimony support "the conclusion that a reasonable alternative design could have been practically adopted at the time of sale". See Quintana-Ruiz v. Hyundai Motor Corp., 303 F.3d 62, 72 (1st Cir. 2002), quoting Restatement (Third) of Torts: Product Liability, § 2 cmt. f (1998).

Choosing not to test is not fatal to an expert's testimony. See Watkins v. Telsmith, Inc., 121 F.3d 984, 990 (5th Cir. 1997)("[t]esting is not an absolute prerequisite to the admission of expert testimony on alternative designs" (internal quotation marks omitted)); See also Kannankeril v. Terminix Int'l, Inc., 128 F.3d 802, 809 (3d Cir. 1997) (holding that lack of peer review or publication was not dispositive where the expert's opinion was supported by "widely accepted scientific knowledge").  Furthermore, "peer review" is merely a variant of general acceptance of a method. 3-702 Federal Rules of Evidence Manual 702.02 (Matthew Bender).

Here, the ANSI Standard mandating alternative audible alarms with a time delay for forward and reverse demonstrates that the alternative reasonable design has been tested, peer reviewed, and is generally accepted. It says as much in the standard. The testing and peer review has already been completed and incorporated into the ANSI standard.

### 4. *The Defendants Mislead this Court in Section II.D of their Memorandum*

The Defendants argue that Mr. Holt's proposed trial testimony is different than his August 2007 Report of Preliminary Findings that he issued to Sentry Insurance Company, and that because Mr. Holt opined to a slightly different theory in his Expert Report on

February 2, 2010 and at his deposition that his opinions are inherently unreliable. That argument is completely without merit..

Mr. Holt was retained by Sentry Insurance Company in August 2007 and authored his Report without being able to speak to Mr. Dupuis or Mr. Donnelly. Then, this civil action commenced, discovery was conducted, and Mr. Holt was able to review deposition testimony from Mr. Dupuis and Mr. Donnelly. The expert disclosure deadline, set by this Court pursuant to Fed.R.Civ.P. 26(b)(2), was the appropriate time to disclose the complete opinions of Mr. Holt, which the Plaintiffs did.

The caselaw cited by the Defendants in support of their argument that Mr. Holt's opinion is unreliable because it changed somewhat from a pre-suit preliminary Report for Sentry, the worker's compensation insurer, is misleading and distinguishable. In <u>Haller v. AstraZeneca Pharmaceuticals LP</u>, 598 F.Supp. 2d 1271, 1296-87 (M.D. Fla. 2009), the Plaintiffs' expert reported a different weight for a Plaintiff on three separate occasion; first in his Rule 26(b) Report, then in his "declaration," and then at the <u>Daubert</u> hearing. <u>Haller</u> was not a situation where the Plaintiffs' expert's opinion <u>was fully formulated and correct</u> at the time of the Court deadline for Rule 26(b)(2) expert disclosure.

In <u>Lantec, Inc. v. Novell, Inc.</u>, 306 F.3d 1003, 1025 (10th Cir. 2002), the expert changed his opinion <u>from one he gave in an earlier Rule 26(b)(2) expert report</u>. Here, Mr. Holt has disclosed one and only one Fed. R. 26(b)(2) Expert Report to the Defendant and this Court.

### III.    CONCLUSION

The Defendants' motion to Preclude the Expert Testimony of Darry Robert Holt should be DENIED.  The Defendants' Motion for Summary Judgment should be DENIED.

All of the issues raised by the Defendants are typically matter dealt with on cross-examination.  As the U.S. Supreme Court has instructed, <u>Daubert</u> is not a substitute for cross-examination

                                            The Plaintiffs,
                                            By Their Attorney


                                            /s/ Frederic N. Halstrom
                                            _____
                                            Frederic N. Halström BBO #218420
                                            Attorney for Plaintiffs-Appellants
                                            Halström Law Offices, P.C.
                                            P.O. Box 121203
                                            Boston, MA 02112
                                            (617) 262-1060
                                            office@halstrom.com

June 14, 2010

**CERTIFICATE OF SERVICE**

     I, Frederic N. Halstrom, attorney for the Plaintiffs, hereby certify that on the 14th day of June, 2010, a true copy of the foregoing along with the Affidavit of Darry Robert Holt, filed through the ECF, will be sent electronically to the registered participants as identified on the Notice of Electronic Filing and the paper copies will be served upon anyone indicated as a non-registered participant.
                                            /s/ Frederic N. Halstrom
                                            -----------------------------
                                            Frederic N. Halstrom